O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RICARDO JOHN NAVARRO,<br><br>    Defendant. | Case No. 5:22-cr-00063-JWH<br><br>**ORDER REGARDING DEFENDANT'S MOTION FOR RECONSIDERATION [ECF No. 56] AND GOVERNMENT'S MOTION TO HOLD DEFENDANT'S MOTION FOR RECONSIDERATION IN ABEYANCE [ECF No. 57]** |

Before the Court are two motions:

- the motion of Defendant Ricardo John Navarro for reconsideration of this Court's order denying Navarro's earlier motion to dismiss the indictment pursuant to the Second Amendment,[1] and
- the Government's Motion to hold in abeyance Navarro's instant Motion for reconsideration.[2]

Both Motions are opposed,[3] and on June 7, 2024, the Court heard oral argument.[4]  For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Navarro's Motion and **DENIES** the Government's Motion.

## I.  BACKGROUND

In March 2022, the Government indicted Navarro on one count for felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) & (9).[5]  That statute provides in pertinent part as follows:

> It shall be unlawful for any person (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [or] (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

The Government alleges that in December 2021, Navarro knowingly possessed a 9mm pistol, knowing that he had previously been convicted of felony vandalism (Cal. Penal Code § 594(b)(1)) and misdemeanor domestic violence (Cal. Penal Code

---

[1]     Def.'s Mot. for Recons. ("Navarro's Motion") [ECF No. 56]; *see also* Def.'s Mot. to Dismiss Case for Second Amendment Violations (the "Motion to Dismiss") [ECF No. 33]; Minute Order re: the Motion to Dismiss (the "Minute Order") [ECF No. 39].

[2]     Pl.'s Mot. to Hold in Abeyance Navarro's Motion (the "Government's Motion") [ECF No. 57].

[3]     Opp'n to the Government's Motion [ECF No. 59]; Opp'n to Navarro's Motion (the "Government's Opposition") [ECF No. 63].

[4]     *See* Hr'g Re: Navarro's Motion & Government's Motion [ECF No. 65].

[5]     Indictment [ECF No. 1].

§ 273.5(a)—Inflicting Corporal Injury on a Spouse, Cohabitant, or Child's Parent).[6] According to the Government, Navarro sold the pistol to a Confidential Informant for $800.[7] Navarro was arrested and indicted in April 2023.[8]

Navarro filed his Motion to Dismiss in June 2023.[9] In that Motion, Navarro argued that the charges violate his Second Amendment rights as interpreted by the U.S. Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).[10] In July 2023, this Court conducted a hearing and, after oral argument, denied Navarro's Motion to Dismiss.[11] The Court held that Navarro is not protected by the Second Amendment with respect to the instant charges because *Bruen* discussed the rights of only "law-abiding" citizens, *Bruen*, 597 U.S. at 9, but Navarro had been convicted of felony vandalism and misdemeanor domestic violence,[12] either of which convictions subjects him to potential criminal liability under 18 U.S.C. § 922(g).

In May 2024—10 months after this Court denied Navarro's Motion to Dismiss— in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), the Ninth Circuit ruled on a different Second Amendment challenge to 18 U.S.C. § 922(g). In that case, Defendant Duarte "was charged and convicted under § 922(g)(1) after police saw him toss a handgun out of the window of a moving car," because he had "five prior, non-violent criminal convictions in California: vandalism, Cal. Penal Code § 594(a); felon in possession of a firearm, *id.* § 29800(a)(1); possession of a controlled substance, Cal. Health & Safety Code § 11351.5; and two convictions for evading a peace officer, Cal. Veh. Code § 2800.2." *Duarte*, 101 F.4th at 661-63. "[T]he Government conceded . . . that 'none of [Duarte's] prior convictions [was] violent.'" *Id.* at 663 n.1.

The Ninth Circuit held that Duarte's conviction pursuant to 18 U.S.C. § 922(g)(1) was unconstitutional under the Second Amendment. *See Duarte*, 101 F.4th at 661. Specifically, the court concluded that, "as applied to [Duarte], a non-violent offender who has served his time in prison and reentered society," (1) the Second Amendment's protection applies to him "[b]ecause [he] is an American citizen" and is therefore "'part

---

[6]  *Id.*

[7]  Opp'n to Motion to Dismiss [ECF No. 35] 2:20-26.

[8]  Mins. of Arrest on Indictment Hr'g [ECF No. 10].

[9]  *See* Motion to Dismiss.

[10] *See generally id.*

[11] *See generally* Minute Order.

[12] *See* Indictment.

of "the people" whom the Second Amendment protects'";[13] and (2) "[t]he Government put forward no 'well-established and representative historical analogue' that 'impose[d] a comparable burden on the right of armed self-defense' that was 'comparably justified' as compared to § 922(g)(1)'s sweeping, no-exception, lifelong ban" for a non-violent felon. *Id.* at 662 (quoting *Bruen*, 597 U.S. at 29-30 & 32).

Shortly after the Ninth Circuit issued *Duarte*, Navarro filed his instant Motion, through which he asks this Court to reconsider its denial of his earlier Motion to Dismiss. The Government then filed its Motion to hold in abeyance Navarro's Motion for Reconsideration, pending the Government's request to the Ninth Circuit for a rehearing of *Duarte en banc*. This Court conducted a hearing on both Motions on June 7, 2024. Two weeks later, the Supreme Court issued its decision in *United States v. Rahimi*, 2024 WL 3074728 (U.S. June 21, 2024), thereby upholding the disarmament of a domestic violence offender under 18 U.S.C. § 922(g)(8)—which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that the individual "represents a credible threat to the physical safety of [an] intimate partner" or a child of the partner or individual—against Defendant Rahimi's Second Amendment challenge. Specifically, the Supreme Court declared:

> Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms. As applied to the facts of [*Rahimi*], Section 922(g)(8) fits comfortably within this tradition.

*Id.* at *5.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

Although the Federal Rules of Criminal Procedure do not explicitly provide for it, a district court may hear a motion for reconsideration in a criminal case. *See, e.g.*, *United States v. Eldridge*, 107 F. App'x 36, 38 (9th Cir. 2004); *United States v. Walker*, 601 F.2d 1051, 1057-58 (9th Cir. 1979); *United States v. Hector*, 368 F. Supp. 2d 1060, 1062-63 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007). "Courts have held that motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *U.S.A. v. Krug*, 2012 WL 12973177, at *2 (C.D. Cal. Oct. 30, 2012) (citing *Hector*, 368 F. Supp. 2d at 1063). Rules 59 and 60(b)

---

[13] The *Duarte* court held that "the people" protected by the Second Amendment "include, at a minimum, all American citizens—without qualification." *Duarte*, 101 F.4th at 672-73.

of the Federal Rules of Civil Procedure and L.R. 7-18 govern civil motions for reconsideration.

### 1. Rules 59 and 60

A district court may reconsider a ruling under either Rule 59 (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *See School Dist. No. 1J, Multnomah County, Oregon v. AcandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

As relevant in this case, reconsideration under Rule 59(c) may be appropriate when the movant demonstrates the existence of an intervening change in the controlling law. *See id.* at 1263. Neither mere dissatisfaction with the court's order nor a belief that the court is wrong in its prior decision is an adequate ground for relief. *See Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

Rule 60(b) pertains only to ***final*** judgments, so it does not apply in this case. *See* Fed. R. Civ. P. 60(b); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005) (noting that "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence" and highlighting finality as the distinction between Rules 59 and 60).

### 2. L.R. 7-18

In addition, this Court's Local Rules define the situations in which a party may seek the reconsideration of an order:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18. A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also* L.R. 7-18 ("No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.").

B.  **Second Amendment Challenge**

In *Bruen*, the Supreme Court directed lower courts to evaluate Second Amendment challenges as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24. Courts have interpreted *Bruen* as prescribing a "two-step, text-and-history framework." *See Duarte*, 101 F.4th at 662.

C.  **Motion to Hold in Abeyance**

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That discretion to stay proceedings extends to criminal cases when a potentially dispositive change in controlling law is pending consideration before a higher court. *See, e.g.*, *United States v. Castro*, 382 F.3d 927, 929 (9th Cir. 2004) (recognizing that whether to "stay further proceedings pending the outcome of *Booker*" was "within the exercise of [the district court's] discretion"); *United States v. Urrutia*, 897 F.2d 430, 433 n.2 (9th Cir. 1990) ("The district court may, of course, stay further proceedings regarding the assessments pending the Supreme Court's decision in *Munoz–Flores*.").

## III.  ANALYSIS

A.  **The Government's Motion**

In *Duarte*, the Ninth Circuit held that (1) with respect to *Bruen*'s first step, the Second Amendment's plain text protects "all American citizens—without qualification"; and (2) at *Bruen*'s second step, permanently banning non-violent offenders from possessing a firearm, even after serving their sentence for the underlying offense, is inconsistent with the Nation's historical tradition of firearm regulation. *See Duarte*, 101 F.4th at 673 & 676.

*Duarte* is undoubtedly an intervening change in controlling law that affects the Court's earlier reasoning with respect to 18 U.S.C. § 922(g)(1). *See* Fed. R. Civ. P. 59; L.R. 7-18. Indeed, the charge at issue in *Duarte* was brought under 18 U.S.C. § 922(g)(1) with respect to Defendant Duarte's previous conviction for non-violent felony

vandalism—the same charge that Navarro challenges in his instant Motion for Reconsideration. *See Duarte*, 101 F.4th at 661-63. Through its Motion, the Government notes the similarity between this case and *Duarte* and urges the Court to hold Navarro's Motion in abeyance while the Government seeks a rehearing of *Duarte en banc*.[14]

But Navarro is separately potentially culpable under 18 U.S.C. § 922(g)(9), and *Duarte* does not affect the Court's conclusion with respect to that charge. And Navarro has a Constitutional and statutory right to a speedy trial. *See* U.S. Const. amend. VI, 18 U.S.C. §§ 3161 *et seq.* Therefore, the Court declines to exercise its discretion to hold Navarro's Motion in abeyance. The Government's Motion is **DENIED**.

### B. Navarro's Motion

With respect to the charges under Paragraph (1) of 18 U.S.C. § 922(g), this case is virtually indistinguishable from *Duarte*. Because *Duarte* is currently binding precedent, Navarro's Motion—to the extent that it challenges the charge brought against him under 18 U.S.C. § 922(g)(1)—is **GRANTED** and the elements of the indictment that relate to that Paragraph (1) charge are **STRICKEN**.

The Court agrees with the Government that *Duarte* does not apply with respect to Paragraph (9) of 18 U.S.C. § 922(g), such that Navarro does not meet the standard for reconsideration. Nonetheless, the Court exercises its discretion to affirm its decision to reject Navarro's Second Amendment challenge with respect to that charge. *See Arizona v. California*, 460 U.S. 605, 619 (1983), *decision supplemented*, 466 U.S. 144 (1984) (a court may, on its own initiative, reconsider an issue previously decided in the same case).

Presuming that Navarro is protected under the Second Amendment's text, *see Duarte*, 101 F.4th at 673, the Court begins its analysis of Navarro's Motion with respect to 18 U.S.C. § 922(g)(9) at the second *Bruen* step. At that point, in analyzing the second *Bruen* step with respect to 18 U.S.C. § 922(g)(1) for non-violent felons, the *Duarte* court examined (1) "a trio of draft proposals that certain members of New Hampshire's, Massachusetts's, and Pennsylvania's state conventions recommended adding to the Constitution prior to its ratification," *Duarte*, 101 F.4th at 677; (2) "17th-to early 19th-century colonial and American laws . . . that disarmed British Loyalists, Catholics, Indians, and Blacks," *id.* at 679; and (3) "the history of punishing felonies at the Founding," *id.* at 688. With respect to the additions to the Constitution proposed by the delegates from New Hampshire, Massachusetts, and Pennsylvania, the Ninth Circuit "agree[d] with now-Justice Barrett that '[t]he common concern [among] all three' of the proposals was 'not about felons in particular or even criminals in general' but those

---

[14] *See generally* Government's Motion.

whose conduct 'threatened violence and the risk of public injury.'" *Id.* at 678 (quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019), *abrogated by Bruen*, 597 U.S. 1 (Barrett J., dissenting)). The *Duarte* court held that, "[o]n balance, . . . the draft proposals allude to a possible tradition of disarming a narrow segment of the populace who posed a risk of harm because their conduct was either violent or threatened future violence," which was not "distinctly similar" to "non-violent offenders like Duarte." *Id.* at 679.

The Ninth Circuit noted that 18 U.S.C. § 922(g)(1) was "'[o]riginally intended to keep firearms out of the hands of *violent*' offenders," *id.* at 687 (quoting Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 274 (2020)) (emphasis in original) and concluded that "[b]ased on this record, we cannot say that Duarte's predicate offenses were, by Founding era standards, of a nature serious enough to justify permanently depriving him of his fundamental Second Amendment rights," *id.* at 691.

Throughout its second step analysis, the *Duarte* court cited the dissenting opinion by now-Justice Barrett in the Seventh Circuit's *Kanter* decision. *See, e.g.*, *Duarte*, 101 F.4th at 678 (holding, with respect to the proposed additions to the Constitution, "we agree with now-Justice Barrett that '[t]he common concern [among] all three' of the proposals was 'not about felons in particular or even criminals in general' but those whose conduct 'threatened violence and the risk of public injury'"). *Kanter*, a pre-*Bruen* case, involved a Second Amendment challenge to 18 U.S.C. § 922(g)(1) and its Wisconsin state analog. *See generally Kanter*, 919 F.3d at 439.

In her dissent, then-Judge Barrett employed a *Bruen*-step-two style analysis to conclude that "[h]istory does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons[, b]ut it does support the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous," including, "for example, those convicted of crimes of domestic violence." *Id.* at 453 & 464 (Barrett J., dissenting). Then-Judge Barrett noted that 18 U.S.C. § 922(g)(9) "demonstrate[s] the necessary fit between this public-safety end and the government's chosen means . . . because 'no one doubts that the goal of § 922(g)(9), preventing armed mayhem, is an important governmental objective' and '[b]oth logic and data establish a substantial relation between § 922(g)(9) and this objective.'" *Id.* at 466 (quoting *United States v. Skoien*, 614 F.3d 638, 643 (7th Cir. 2010)); *see also id.* (citing *Skoien*, 614 F.3d at 644) ("[N]o matter how you slice these numbers, people convicted of domestic violence remain dangerous to their spouses and partners.").

The Ninth Circuit has separately adopted then-Judge Barrett's assertion that "'founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety.'" *United States v. Perez-Garcia*, 96 F.4th 1166, 1189 (9th Cir. 2024) (quoting *Kanter*, 919 F.3d at 458 (Barrett, J., dissenting)). "In short, regulations

that authorize disarmament only after individualized findings of dangerousness by public officials are within the heartland of legislative power to disarm those who are not law-abiding, responsible citizens." *Id.* at 1190. *Duarte* seconded that support. *See Duarte*, 101 F.4th at 681 (quoting *Perez-Garcia*, 96 F.4th at 1187) ("The justification was always that those being disarmed were dangerous.").

Furthermore, the Supreme Court's decision in *Rahimi* explicitly holds that the disarmament of domestic violence offenders does not violate the Second Amendment under *Bruen*. *See generally Rahimi*, 2024 WL 3074728. *Rahimi* focuses on a challenge to Paragraph (8) of 18 U.S.C. § 922(g), involving a domestic violence restraining order—*i.e.*, the **threat** of domestic violence; in comparison, Navarro's domestic violence **conviction** presents a much stronger justification for disarmament under *Bruen* than did the facts in *Rahimi*.

Because founding-era history and tradition support disarming domestic violence offenders, Navarro's Motion—to the extent that it challenges the charge brought against him under Paragraph (9) of 18 U.S.C. § 922(g)—is **DENIED**.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Government's Motion to hold Navarro's Motion in abeyance is **DENIED**.

2. Navarro's Motion is **GRANTED in part** and **DENIED in part** as follows:

   a. to the extent that Navarro's Motion challenges the charge brought against him under Paragraph (1) of 18 U.S.C. § 922(g), Navarro's Motion is **GRANTED** and the elements of the indictment that relate to that 18 U.S.C. § 922(g)(1) charge are **STRICKEN**; and

   b. to the extent that Navarro's Motion challenges the charge brought against him under Paragraph (9) of 18 U.S.C. § 922(g), Navarro's Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 11, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE